**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BIGFOOT 4x4, INC.,

      Plaintiff,

v.

THE INDIVIDUAL, CORPORATION,
LIMITED LIABILITY COMPANY,
PARTNERSHIP AND
UNINCORPORATED ASSOCIATION
IDENTIFIED ON SCHEDULE A HERETO,

      Defendant.

Case No. 26-cv-3883

Judge

**COMPLAINT**

Plaintiff, BIGFOOT 4x4, INC. ("Plaintiff" or "BIGFOOT 4x4, INC."), by undersigned counsel, hereby complains of the Partnership and Unincorporated Association identified in Schedule A attached hereto (collectively, "Defendant"), and hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq.; 28 U.S.C. § 1338(a) - (b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant since the Defendant directly targets

consumers in the United States, including Illinois, through at least the fully interactive commercial Internet store operating under the Defendant Online Marketplace Account identified in Schedule A attached hereto (collectively, the "Defendant Internet Store"). Specifically, Defendant is reaching out to do business with Illinois residents by operating a commercial, interactive Internet Store through which Illinois residents can purchase products including counterfeit versions of Plaintiff's BIGFOOT Trademark and has sold and shipped at least one remote-controlled truck bearing a counterfeit version of Plaintiff's BIGFOOT Trademark to the Northern District of Illinois. The Defendant has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. The Defendant is committing tortious acts in Illinois, engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (the "Counterfeit Products").

4. Defendant created an Internet Store and designed it to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. Defendant attempts to avoid liability by going to great lengths to conceal both its identity and the full scope and interworking of its illegal counterfeiting operation. Plaintiff is forced to file this action to combat Defendant's counterfeiting of Plaintiff's registered trademarks as well as to protect unknowing

consumers from purchasing unauthorized products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks as a result of Defendant's actions and seeks injunctive and monetary relief.

5. This Court has personal jurisdiction over the Defendant, in that the Defendant conducts business in Illinois and in this Judicial District by selling and shipping at least one counterfeit product to an address in the Northern District of Illinois, and the acts and events giving rise to this lawsuit of which the Defendant stands accused were undertaken in Illinois and in this Judicial District.

## THE PLAINTIFF

6. Plaintiff owns and manages the licensing, sale, and marketing of BIGFOOT products and is headquartered at 2286 Rose Lane, Pacific, Missouri 63069.

7. Plaintiff is in the business of developing, marketing, selling, distributing, and licensing BIGFOOT branded products. The original BIGFOOT began as a 1974 Ford F-250 pickup that was modified by its owner Bob Chandler beginning in 1975. By 1979, the modifications were so extensive that the truck came to be regarded as the first monster truck. Other trucks with the name "BIGFOOT" have been introduced in the years since, and it remains a well-known monster truck moniker in the United States. BIGFOOT 4x4, INC. is the official source of BIGFOOT products.

8. Plaintiff is the owner of the U.S. Trademark Registration No. 1,387,617 for the "BIG FOOT" word mark in class 28 (the "BIGFOOT Trademark").

3

9.      The above registration for the BIGFOOT mark is valid, subsisting, and in full force and effect. A true and correct copies of the federal trademark registration certificate for the above-referenced mark is attached hereto as Exhibit 1.

10.      The BIGFOOT Trademark is distinctive and identifies merchandise as goods from BIGFOOT 4x4, INC. or its duly authorized licensees.

11.      The BIGFOOT Trademark has been continuously used and never abandoned.

12.      Plaintiff's BIGFOOT Trademark is exclusive to Plaintiff and is displayed extensively on Plaintiff's Products and in Plaintiff's marketing and promotional materials. Plaintiff's BIGFOOT Trademark has been the subject of substantial and continuous marketing and promotion by Plaintiff at great expense.  In fact, Plaintiff has expended significant resources annually in advertising, promoting, and marketing featuring Plaintiff's BIGFOOT Trademark. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, a website, social media sites, and point of sale materials.  Because of these and other factors, Plaintiff's BIGFOOT Trademarks has become famous worldwide.

13.      Plaintiff's BIGFOOT Trademark is distinctive when applied to Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its Trademark are manufactured to the highest quality standards. Plaintiff's BIGFOOT Trademark has achieved fame and recognition, which has only added to the inherent distinctiveness of the mark.  As such, the goodwill associated with Plaintiff's BIGFOOT Trademark is incalculable and of inestimable value to Plaintiff.

14.      Plaintiff's BIGFOOT Trademark qualifies as a famous mark, as used in 15 U.S.C. §1125 (c)(1) and has been continuously used and never abandoned.

15.     Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting its Trademark.  As a result, products bearing the BIGFOOT Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

## THE DEFENDANT

16.     Defendant is an individual and business entity who, upon information and belief, primarily resides in the People's Republic of China.  Defendant conducts business throughout the United States, including Illinois and within this Judicial District, through the operation of the fully interactive commercial website and online marketplace operating under the Defendant's Internet Store.  The Defendant targets the United States, including Illinois, has offered to sell and has sold and continues to sell counterfeit products to consumers within the United States, including Illinois and this Judicial District. Specifically, Defendant sold a remote-controlled truck to a customer in the Northern District of Illinois on July 3, 2025 and agreed to ship the product to the Northern District of Illinois on or before July 24, 2025.

## THE DEFENDANT'S UNLAWFUL CONDUCT

17.     The success of Plaintiff's brand has resulted in its counterfeiting.  Plaintiff has identified an online marketplace account linked to a fully interactive website and marketplace listing on the Walmart e-commerce platform which was offering for sale, selling, and importing counterfeit products to consumers in this Judicial District and throughout the United States. Internet websites like the Defendant Internet Store are estimated to receive tens of millions of visits per year and generate over $135 billion in annual online sales.  According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in 2024 was over $5.4

5

billion, up from $2.8 billion in 2023. According to a 2021 study on the impact of the sale of fraudulent goods entitled "The Counterfeit Silk Road - Impact of Counterfeit Consumer Products Smuggled into the United States" (the 2021 study), Internet websites like the Defendant Internet Store are also estimated to contribute to over 653,000 lost jobs for legitimate businesses and broader economic damages such as lost wages in an amount over $36 billion and a loss of federal and state tax revenue of over $13.5 billion every year.

18.     Upon information and belief, Defendant facilitates sales by designing the Defendant's Internet Store so that it appears to unknowing consumers to be an authorized online retailer, outlet store, or wholesaler selling genuine products. The Defendant's Internet Store looks sophisticated and accepts payment in U.S. dollars via credit cards, PayPal and Payoneer. Defendant's Internet Store includes images and design elements that make it very difficult for consumers to distinguish its counterfeit site from an authorized website.

19.     Plaintiff has not licensed nor authorized Defendant to use its Trademark and the Defendant is not an authorized retailer of its genuine products.

20.     Upon information and belief, Defendant deceives unknowing consumers by using the Plaintiff's BIGFOOT Trademark without authorization within the content, text, and/or meta tags of its websites to attract various search engines looking for websites relevant to consumer searches for Plaintiff's products. Additionally, upon information and belief, Defendant uses other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant's Internet Store listings show up at or near the top of relevant search results and misdirect consumers searching for Plaintiff's genuine products. Further, Defendant utilizes similar illegitimate SEO tactics to propel new online marketplace accounts to the top of search results after others are shut down.

21. Defendant goes to great lengths to conceal its identity and is using a fictitious name and address to register and operate its Internet Store. Upon information and belief, some of the tactics used by the Defendant to conceal its identity and the scope and interworking of its counterfeit operation to avoid being shut down includes regularly creating new websites and online marketplace accounts on various platforms using the identity listed in Schedule A to the Complaint, as well as other fictitious names and addresses.

22. In addition to operating under a fictitious name, the Defendant in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, when counterfeiters like Defendant receives notice of a lawsuit, they will often register new online marketplace accounts under new aliases and move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters will also ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. The 2021 study indicated that the Internet has fueled explosive growth in the number of small packages of counterfeit goods shipped through the mail and express carriers. This growth closely correlates to the growth of the ecommerce industry which now make up 16.4% of all retail transactions as reported by the Census Bureau of the U.S. Department of Commerce. According to the Department of Homeland Security's 2024 Intellectual Property Rights Seizures Report, the vast majority of Intellectual Property Rights seizures continue to take place within the express consignment and mail shipping methods. 97% of all cargo seizures were made in de minimis shipments.

23. Further, counterfeiters such as Defendant typically operate multiple credit card merchant, Walmart, PayPal and Payoneer accounts behind layers of payment gateways so that they

7

can continue to operate in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendant maintains off-shore bank accounts and regularly moves funds from its Walmart, PayPal and Payoneer accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of Walmart, PayPal and Payoneer transaction logs from prior similar cases indicate that offshore counterfeiters regularly move funds from U.S.-based Walmart, PayPal and Payoneer accounts to China-based bank accounts outside the jurisdiction of this Court.

24. On information and belief, Defendant is in constant communication with other counterfeiters and regularly participates in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation and potential new lawsuits.

25. Defendant, without any authorization or license from Plaintiff, has knowingly and willfully used and continue to use Plaintiff's BIGFOOT Trademark in connection with the advertisement, distribution, offering for sale and sale of counterfeit products into the United States and Illinois over the Internet. The Defendant's Internet Store offers shipping to the United States, including Illinois and, on information and belief, the Defendant has offered to sell counterfeit products into the United States, including Illinois.

26. Defendant's use of Plaintiff's BIGFOOT Trademark in connection with the advertising, distribution, offering for sale and sale of counterfeit products, including the sale of counterfeit products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

27. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-26 of this Complaint.

28.     This is a trademark infringement action against Defendant based on its unauthorized use in commerce of counterfeit imitations of Plaintiff's Trademark in connection with the sale, offering for sale, distribution and/or advertising of infringing goods. Plaintiff's BIGFOOT Trademark is highly distinctive. Consumers have come to expect the highest quality from Plaintiff's products provided under its Trademark.

29.     Defendant has sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products in connection with Plaintiff's BIGFOOT Trademark without Plaintiff's permission.

30.     Plaintiff is the owner of the BIGFOOT Trademark (Exhibit 1). The United States Registrations for Plaintiff's BIGFOOT Trademarks are in full force and effect. Upon information and belief, Defendant has knowledge of Plaintiff's rights in its Trademark and is willfully infringing and intentionally using Plaintiff's BIGFOOT Trademark on counterfeit products. Defendant's willful, intentional, and unauthorized use of Plaintiff's BIGFOOT Trademark are likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit products among the general public.

31.     Defendant's activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

32.     The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offering to sell and sale of counterfeit Plaintiff's products.

33.     Plaintiff has no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known Trademarks.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

34. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-33 of this Complaint.

35. Defendant's promotion, marketing, offering for sale and sale of counterfeit products have created and are creating a likelihood of confusion, mistake and deception among the general public as to the affiliation, connection or association with Plaintiff or the origin, sponsorship or approval of Defendant's counterfeit products by Plaintiff.

36. By using Plaintiff's BIGFOOT Trademark in connection with the sale of counterfeit products, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the counterfeit products.

37. Defendant's conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit products to the general public under 15 U.S.C. §§ 1114, 1125.

38. Plaintiff has no adequate remedy at law, and, if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510/1, et seq.)

39. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-38 of this Complaint.

40. Defendant has engaged in acts violating Illinois law including, but not limited to, passing off its counterfeit products as those of Plaintiff, causing likelihood of confusion and/or misunderstanding as to the source of its goods, causing likelihood of confusion and/or

misunderstanding as to an affiliation, connection or association with genuine products, representing that their products have Plaintiff's approval when they do not and engaging in other conduct which creates likelihood of confusion or misunderstanding among the public.

41. The foregoing Defendant's acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq.

42. Plaintiff has no adequate remedy at law, and Defendant's conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendant's unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

1) That Defendant, its affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using Plaintiff's BIGFOOT Trademark or any confusingly similar trademark or name in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's BIGFOOT Trademark;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff that is not Plaintiff's or is not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under its Trademark;

c.  committing any acts calculated to cause consumers to believe that Defendant's counterfeit products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.  further infringing Plaintiff's BIGFOOT Trademark and damaging Plaintiff's reputation and goodwill;

e.  shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered including Plaintiff's BIGFOOT Trademark, or any reproductions, counterfeit copies, or colorable imitations thereof; and

f.  using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Account or any online marketplace account that is being used to sell or is the means by which Defendant could continue to sell counterfeit products;

2)  That Defendant, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendant has complied with paragraph 1, a through f, above;

3)  Entry of an Order that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including any online marketplaces such as Walmart, PayPal and Payoneer, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, and web hosts for the Defendant's Online Marketplace Accounts, shall:

a. disable and cease providing services for any accounts through which Defendant engages in the sale of counterfeit products using Plaintiff's BIGFOOT Trademark including any accounts associated with the Defendant listed in Schedule A; and

b. disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of counterfeit products using Plaintiff's BIGFOOT Trademark;

4) That Defendant accounts for and pay to Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's BIGFOOT Trademark are increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, Plaintiff is awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of its Trademarks;

6) That Plaintiff is awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated: April 8, 2026          Respectfully submitted,

By:    */s/ Michael A. Hierl*
Michael A. Hierl
William B. Kalbac
Robert P. McMurray
Elizabeth A. Miller
John Wilson
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
(312) 580-1994 Facsimile
mhierl@hsplegal.com
Attorneys for Plaintiff
BIGFOOT 4x4, INC.

14

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Complaint was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on April 8, 2026.


                                       s/Michael A. Hierl